Our second case this morning is American Family Mutual Insurance v. Westfield, and that is case number 4110088 for the appellant Richard Chappin, and for the appellee Robert, help me out, Ostojic? Ostojic. Ostojic. Thank you very much. Are you guys going to be splitting your time? Yes. Okay. You may proceed. Thank you. May it please the court, counsel, my name is Rick Chappin. I'm the attorney representing American Family Mutual Insurance Company in this matter. This cause comes before the court in connection with a declaratory judgment action that was filed by American Family Insurance following the entry of a judgment in favor of Westfield Insurance and against Shannon Dennis and American Family Insurance. The defendants answered the complaint for declaratory judgment and asserted affirmative defenses. The declaratory judgment seeks a determination that there is no duty on the part of American Family Insurance to indemnify its insured with regard to the judgment entered against her in the earlier Westfield lawsuit. The defendants filed a motion for summary judgment as to two of the affirmative defenses, and following a hearing on that motion, Judge Lee Ann Hill in the circuit court of McLean County entered a summary judgment in favor of the defendants on two of those affirmative defenses. Basically, the affirmative defenses were those of whether or not the reservation of rights letter sent by American Family was timely, the court found that it was not, and whether or not the litigation of the issue of the intended or expected exclusion in the insurance policy can be litigated. In terms of setting up what the real issues are in this case, some background as to how the declaratory judgment action came to be filed. Shannon Dennis, a minor, together with some friends, was one day playing with some matches as they walked along the street in Bloomington Street. Some matches were apparently tossed in a manner which resulted in a warehouse type of building burning down, resulting in a property damage claim being made by the owner of that building on its insurance carrier, which was Westfield Insurance. Westfield Insurance honored the claim against it, paid the property damage claim, and then turned to the possible tort liaison, Shannon Dennis, looking for reimbursement under its segregation rights. Shannon Dennis was determined to be an insured under an American Family policy which had been issued to her grandparents. She was an insured because she was then living with her father in the grandparents' home, and the policy provides for coverage under those circumstances, provides liability coverage, and makes that person an insured, so Shannon Dennis was determined to be an insured. Now, Westfield Insurance made a demand upon American Family asking for reimbursement for the loss of over $400,000, and Westfield, in the course of making that demand, informed American Family that Shannon Dennis had been charged criminally in the juvenile courts with arson and also with reckless conduct. And in the course of the various matters prior to the filing of the lawsuit, Westfield also informed American Family that Shannon Dennis had been found not guilty of arson, but had been found guilty of reckless conduct. In late summer, prior to filing suit, Westfield Insurance sent a copy of the complaint that it intended to file to American Family and said, if we cannot settle this claim within 30 days, then suit will be filed against your insurer, Shannon Dennis, and here's a copy of the complaint we intend to file. Shortly after receiving that letter, it was analyzed by American Family, the complaint was considered, and that resulted in a letter being written to Patrick Dennis, the father of Shannon Dennis, her legal representative and guardian, and it informed Mr. Dennis that there was reason to believe that Shannon may be sued on account of the fire, and that if suit was filed, that American Family should be notified immediately, and that a defense would be provided by American Family of Shannon Dennis in that tort lawsuit. But the letter also went on to warn that in the event there was a judgment entered against her, there may not be coverage, because they had reason to believe, based upon information they had received, that her conduct and the damages resulting could fall within an exclusion in the policy. And the letter went on to cite specifically the intended or expected exclusion, which provides that American Family will not pay for property damage, which is intended or expected from the standpoint of the insured. Would it be correct to say that negligent or reckless behavior would not fall within the exclusion? Negligence would not fall within the exclusion. Recklessness could fall within the exclusion. Reckless conduct could very well fall within the exclusion, either as intended or possibly as expected, if the conduct is so reckless that she should have anticipated or recognized that the specific damage could result from that conduct. I think pure negligence would not fall within that exclusion. So you say recklessness could be intended? I think yes. I think that intended conduct could, that recklessness could encompass. I thought you said expected. Pardon? I thought you said expected. Well, that's the other part. It's either intended or expected. They're not the same. And so if it's demonstrated in a trial of the exclusion that the damages were actually expressly intended by her, then that would fall within the exclusion. However, if it is conduct that is not expressly intended but was so reckless or was of a nature that she should fairly have anticipated that the damages would result, then that would fall within the expected and then be excluded from coverage. So what happened then? Pardon me? So what happened after the letter was sent? After the letter was sent, Westfield did proceed to file suit. And the reservation of rights letter had been sent. The American family proceeded to defend the lawsuit. The suit was filed against Shannon Dennis later. I think it was amended. So technically the suit was cast in terms of negligence. There was a single count complaint. One count, negligence. So the trial court never considered whether the conduct was either reckless or intentional or willful? Did not consider that. Whether or not it was expected from the standpoint of the insured, whether it was intended from the standpoint of the insured, whether it was willful, that is all correct. So the trial was conducted. The trial was conducted and resulted in judgment against Shannon Dennis in favor of Westfield Insurance. Subsequent to the entry of judgment, then the declaratory judgment action was filed. Now the issues raised, well, let me back up. What American family had done in this instance is they were confronted with that classic situation we see frequently in a coverage situation. They're confronted with a complaint which on its face falls within the coverage. It's a negligence cause of action against their insured. However, they also have reason to believe that there could be facts which have proven would take it outside of the coverage because of an exclusion in the policy. That being the reckless conduct or perhaps intentional. Even though she'd been found not guilty of arson, that would not be binding. That's a different trier of fact making and determination. So there's the possibility of intended conduct. There's the possibility of her having, should have expected the damages that result. So faced with that classic confrontation, they did what the courts have long said you should do. Defend the action under a reservation of rights. You could have filed a declaratory judgment immediately. Could have. Could have but not required to do so. And if you had done so, wouldn't that have resulted in a tolling, so to speak, of the underlying action against her? Not necessarily. The courts have the discretion. The trial courts have the discretion as to whether or not to stay the underlying action and let the D.J. proceed. Or more likely and more probably, what they typically do is let the underlying action proceed and say you can resolve the D.J. at a later point in time. Which, in all fairness, gives the insured the benefit of a defense rather than having two actions proceeding simultaneously or having a situation where the insured doesn't even get the benefit of a defense, which was provided. So there was a bench trial held? A bench trial held and resulted in a finding of negligence. What was the defense? The defense is that she was not negligent. She was not careless. It was unsuccessful. Wasn't she part of the group in herself, plotting matches and just throwing them around in buildings? Wasn't that what happened? That's what happened. Those are the facts that have been developed and were presented in the negligence case. And so one can fairly see how that would be deemed negligent conduct. Who is the trial court in the underlying action against her who found the negligence? Who is the trial judge? Yes. Judge Kral. Okay. And then the matter went before Judge Hill? The underlying action did not go before Judge Hill. But I'm talking about this matter. In this matter, the summary judgment was considered by Judge Hill. In her order granting summary judgment, she basically ruled two ways or made two determinations. One, she said that the reservation of rights letter was ineffective because it was not served essentially in a timely fashion. The reservation of rights letter was sent before the lawsuit was filed. The purpose of a reservation of rights letter is the mechanism by which the insurer notifies the insured that there's a lawsuit either pending or threatened. So you were too early? That's the argument, is that we were too early. I don't see much of that. Nor do I, Your Honor. I feel that giving the insured more time to assess the situation and take action is better than insisting upon it can never be served until after. Has there been any case that has ever held the reservation of rights letter was not valid because it was too early? None's been cited, and I did not find any. The one case that was cited by the defendant appellees is a duty to defend case. So in this instance, we agree entirely that there's no rationale offered. Other than being too early, what was the complaint, if any, about the reservation of rights letter? The other complaint about the reservation of rights letter, and this is one that was not really addressed by Judge Hill, but which was raised in the appellees' briefs, is the issue of a conflict of interest. And the argument is that the reservation of rights letter failed to inform the insured of a conflict of interest and to inform the insured that given that conflict of interest, they had a right to control the litigation with their attorney of their own choice at the expense of American Family. And there, quite honestly, was no conflict of that nature. American Family had no duty to inform them of that conflict since it did not exist. And so there is no problem. Is there a case law that places that burden on you to explicate all of these supposed hoardings and possible conflicts and the like? No, the case is saying that if an analysis of the underlying complaint reveals the existence or potential for a conflict of interest, such that the insurer would not have an interest in vigorously defending the underlying lawsuit and might try to steer it in a fashion where there would not be coverage or have the opportunity to steer it in that direction, then you must inform them of the conflict and give them the option to control the litigation or execute a waiver allowing the insurer to control the litigation despite that conflict. Here with a single count negligence complaint, the interests of the insured and the insurer were identical. Both want to win. Both want to defeat the negligence claim. And that would dispose of the lawsuit. American Family would have no exposure. The insured would have no exposure. Was this argued at the trial level by the Westfield Insurance Company as to conflict between American Family and the Dennis family? In the trial of the underlying action? Yes. No, I'm sorry. Was it argued at the hearing on the motion for summary judgment that there was this conflict of interest? Yes. Yes. Yes, it was argued. So the trial judge didn't address it, but it was argued? It was argued. It was briefed. And she said, given the fact that I'm finding that collateral will stop applies and the reservation was too early, I don't have to address the issue of the conflict. Quite honestly, there is no conflict. All the cases cited demonstrating or discussing a conflict are what's called true conflicts or serious conflicts, and those are those instances I just described. And the trial court concluded collateral will stop will apply because of what? Well, the court said that the case had been tried once on the issue of recklessness and once on the issue of negligence, and apparently twice is enough. Well, as to recklessness, though, how would that invoke collateral will stop? I don't see that it does, nor do I see how the fact that there's been a negligence determination invoked collateral will stop where there's now a different issue. Well, maybe the trial judge is saying she was found negligent, so if she was found negligent, it follows that she could not be found to have acted intentionally. Does that make any sense logically? I don't think it does, because while that's argued, that was not an issue before the trial judge. It's like in Shook v. Tenney, the court said that in the negligence case, which resulted in a verdict of negligence against the insured, the jury was not instructed and did not receive argument regarding the issue of whether or not the damages were intended or expected. And therefore, collateral will stop did not apply and the case would proceed with D.J., the declaratory judgment action. Here there are distinctly different issues, which have been recognized in other cases, and American Family did what it's to do to preserve the right to contest the coverage, provide the defense after informing of its position, which it did in the Reservation of Rights letter, and it now has the right to assert an issue that has not been litigated, either in the criminal court, the juvenile proceeding, or in the underlying court case. So American Family's position is that as to her last trial, she was not negligent, but now they intend to show that she acted intentionally. We're not going back to re-litigate the negligence case. The pending action is to determine whether or not the damages, not her conduct, it's a combination of things. The courts have said that you have to demonstrate that the damages were intended or expected, not necessarily just the conduct, not just the flipping of the match, but did she intend or have... Say that again for me. It's not quite the same as negligence because the courts have said that the intended and expected exclusion is to be narrowly applied and construed, and that it has to be that the damage resulting was intended or expected from the standpoint of the insured. And that's what the policy says. We do not pay for damages which were intended or expected from the standpoint of the insured. If we were to reverse, would this go back then as a due request for a trial? Yes. On this issue for prior effect to determine that? Yes. I think then the issue would be a prior effect would consider all the evidence and would have to decide whether or not a 12 or 13-year-old girl, I think this happened just as she had turned 13, should have reasonably expected that damage would be sustained as a result of her taking matches and flipping them into a window of an open building. Did you move for summary judgment at the declaratory judgment stage? No. Well, no, not in response to the one filed by Shannon Dentz. You're just responding to them? Just responding to them. So your position is you want a trial? We want a trial. Although I think that really given the issues that are presented here. Are you saying that the insured would have reasonably had to have expected 400 and some thousand dollars in damages or just that there may be some damage? Would have to. I think the issue would be did she have, should she have expected that property damage could result? I don't think she has to anticipate a specific amount, but that tossing a match into an open building could result in damage to the contents of that building and to the building itself. So that would be the issue of trial? Would be the issue of trial. And the same sort of issue has been litigated in the State Farm versus Leverton case. The same sort of exclusion was at play there. And it was a negligence finding at the trial level, and then it was litigated for coverage at the... So an American can show that she should have reasonably expected some damages from tossing the match in the windows and the exclusion applies? If the trial facts don't conclude, yes, following a trial. We're entitled to have that issue litigated in a separate action, it not having been litigated previously. And as far as the issue was made regarding privity, but privity does not exist in a vacuum. The issue of privity in the collateral estoppel issues, as far as collateral estoppel is concerned, involves whether or not there's a commonality of interest. And where the issue is different than it was at the prior litigation, then there cannot be privity with regard to the separate issue being asserted in the separate cause of action. And I think clearly here, collateral estoppel does not turn on the issue of privity, because we do not have an identical issue. The issue is distinctly different. The jury instruction in a trial of the coverage case would not be the standard negligence instruction. It would have to be a special instruction style to fit the insurance policy and standard of conduct and what type of intention and expectation must be proven. It may not be the easiest case. A negligence case may be easier to prove. I daresay it would be, but there is a right to assert this exclusion. Otherwise, the policy is essentially eviscerated. We'd never have the opportunity to make a meaningful enforcement of the policy exclusion. Thank you, Counselor. We will rebundle. Good morning. May it please the Court. My name is Scott Rizzocchiati, and I represent Shannon Dennis. I'd like to start with an issue that Mr. Chapin discussed at length in his argument, and that's the issue of whether or not a true conflict against the law can be resolved. I think that provides the foundation for the trial court to grant summary judgment as to both affirmative defenses that were pledged. In this case, both the law and the facts demonstrate that a true conflict did, in fact, exist. First, American family in this particular case, in terms of defending the unlawful use of the law, had an underlying tort subrogation claim. American family had a claim supervisor who happened to be an attorney. His name was James Keene. Mr. Keene was monitoring the defense of the case, controlling defense counsel, and he was also making decisions about coverage. Mr. Keene expressly stated in his claim notes, and we've cited that in the briefs as it appears in the record, he expressly stated that there is a conflict here. Now, Mr. Chapin has argued in the past that, well, just because Mr. Keene says there's a conflict doesn't necessarily mean there's a conflict. So what you're saying is Dennis did not want American family to defend her in the underlying action? What I'm saying is Dennis was never given the opportunity to evaluate whether she would elect to go with the counsel selected by American family, or to seek counsel of her choosing. She was never given that opportunity. Who deprived her of the opportunity? American family. How did they do that? They did that. By providing a defense? Pardon me? By providing a defense? Well, I think by, in their reservation of rights letter, advising that she and her father had an opportunity to retain counsel at their own expense, which is contrary to Peppers. Which is contrary to Peppers when they expressly stated in the reservation of rights letter that they will defend, but there is this potential exclusion that might apply. And so, what Illinois law requires... Isn't it a good thing when the insurance company, even though they wonder about the intentional act exclusion, isn't it a good thing if they go ahead and provide the defense? Absolutely. And it's my experience... And which is what they did? Well, but the difference here, the difference here is typically in my experience, and I think the case law fleshes this out, is when an insurance company recognizes that there is a potential conflict, a potential exclusion that might apply, which might preclude coverage, the insurance company offers Peppers counsel. They didn't do that here. They never did it here. But that's what Peppers requires. They don't have that obligation. But they do, because there is a conflict. And that's what Peppers says. And this is why there's a conflict. Do we have to overrule State Farm versus Leprechaun? No, not at all. What's the conflict? The conflict here? Yes. The conflict here, the conflict here is that the interests of the insured diverge from the interests of the insurance company. And that's what the standard is. That's what the courts look at. The case that went to trial, what was the conflict in that case in deciding whether this girl was negligent or not? Well, the conflict in this case is that from day one, or at least shortly thereafter, the insurance company had decided that we're going to try this case. If we get it guilty, then we're just going to file the declaratory judgment. And I think what's important is what Mr. Keene says, because this exemplifies. You mean we're obligated to go along with what Keene says? He finds there's a conflict that resolves it? No, absolutely not. And that was going to be my next point. The first point I was making is Mr. Keene said it. But the reality is if we do a full analysis of what constitutes a conflict or not, again, the issue is there is not a true conflict if the interests of the insured and the insurer are aligned. And in this case, they weren't. They were divergent. And this is why. Why? I'm anticipating your question. This is why. Because Mr. Keene, and this is in the record in his January 6, 2009 note, he says, in the context of his settlement, he says, American family would be better off taking its chances at trial to see if a jury or judge would award the entire amount. And what does that mean? That means that he is not concerned at all about the interests of Shannon Dennis. He doesn't make mention of her. He is not only putting American family first, but he's totally disregarding the interests of the insured. And the whole point… I don't understand how that demonstrates that. Well, isn't her interest to be found not guilty as well in a civil trial? It is. They share that interest. Okay, so where do their interests diverge? The interests diverge in terms… and it's raised in the context of settlement. If Shannon were to be defended by her own attorney, her own Pepper's counsel, Pepper's counsel could look at this case and look at the facts and say, you know what? I think this case should be settled. Let's talk about settlement. That's in the best interest of my client. Maybe not the insurance company, but my client. So that interest was never balanced by American family. Is there something in the record here about settlement offers and all the rest of this and somehow this being more than just speculation and idle at that? There is in the record, and I know Mr. Skoczyk can speak to this because he was the one making the settlement demands. There was a demand communicated by Westfield to American family, which then raised the internal discussion about, well, are we going to respond to this or not? Mr. Keene decided, well, he at least mused in his notes, that I might consider selling this for $100,000, but since we're going to file a D.J. anyways, don't even offer it. So again, the balance that should be maintained between the interests of the insured, since Mr. Keene and American family are controlling her defense, and the interests of the insurance company diverged. And that's the conflict. That's the conflict of interest here, which should have triggered American family to offer Pepper's counsel to Shannon and her father. And that was never done. That would be in the interest of the insured if settled. So that, chief, how would it be to avoid another trial? She had already undergone a trial. Again, it's a minor. She had already undergone a criminal trial, as Mr. Chapin mentioned. And also avoid the potential to have a judgment entered in her favor, entered against her. So evaluating this case... Well, if she's settled, she's going to get an obligation, which presumably she's not going to be able to pay unless she's covered by insurance. That's exactly right. But see, the problem here is we never got to the point where Mr. Ostojik said, I'm not settling for that, because the offer is zero. The offer is zero. How is an offer of zero in Shannon Dennis' best interest? I mean, I can speak for Mr. Ostojik. Isn't this, though, a situation that would arise in every case? Absolutely. But the difference is... If we have a conflict and we're always going to need separate counsel? And that's usually what happens. Usually what happens. So then isn't the question about overruling the Leverton case correct? No, it's not. I don't think that by affirming the trial court here, we're in any way suggesting that Leverton should be overruled because of Leverton. If the whole idea is, gee, there's this possible offer for settlement, and maybe the insurance company won't want to settle, it seems to me that there's the exception that I'll swallow the entire rule, because there will be the expectation of discussion and settlement negotiations in every case. And it's hard for me to envision the situation where a claim couldn't be made from the point of view of the defendant, the personal defendant, and say, yeah, get rid of this case, especially since you're paying. I don't want to have anything more to do with it. Why wouldn't that be the situation in every case? And if it is, if the answer is yes, then how do we not have, as a matter of law, a requirement that in every case, the insurance company must provide alternative counsel for that purpose? And we're not suggesting that in every case. But you are. But I'm not. Well, I don't understand how, you know, I'm trying to proceed here in a chronological fashion, so to speak. If we have a conflict because the defendant wants to have this case settled, in this case and in every case, then why isn't the insurance company, why isn't there a conflict requiring purpose counsel in every case? Because not in every case will the defendant, the policyholder, want to settle the case. Why not? Give me an example where the accused tortfeasor would not want to settle when the insurance company is going to be paying to settle. But there have been cases, and I've experienced those cases. Well, Shannon Dennis says, let me see, he's offering a settlement, you're going to pay it, sounds good to me. I'm having trouble envisioning one where that's not the case. Well, and that may be the case, but in that particular case. Give me an example of one that isn't the case. Well, at this point I can't, but the significance is this, is that in your example, Your Honor, that presumably American family would have sent out the reservation of rights and said, you get purpose counsel. The insurer, Shannon Dennis, says, okay, I think that's a good idea, I'm going to get purpose counsel. My purpose counsel says to the insurance company, Mr. Stojic, he's a reasonable guy, he wants $300,000, pay him. And the insurance company says, no, we're not going to do that. But the difference here is the insurance company has properly then reserved its rights to proceed, to proceed to trial, and then re-litigate or litigate that intentional injury exclusion. And that's the distinction between all the cases that are cited, even Leverton, because there purpose counsel was offered in our case. That's the distinction. So, when you look at everything that happened from the time that American family issued its reservation of rights letter, all the way through trial, this is exactly the type of case for which the estoppel doctrine was designed to apply. And the one case that we cite which is directly on point is the Utica case. And in Utica, there was a similar reservation of rights that was issued to the insured, where the insurer advised the insured that they may retain a counsel at their own expense. And the court determined that that was not sufficient. And that contradicted Peppers because it didn't fairly advise the insured of the nature of the reservation and the conflict of interest. If we disagree with that argument, is there anything that's a problem with the reservation letter, for instance, being sent too early? Is that a serious problem? No. And I agree with you. I don't think there's any such thing as a reservation of rights letter that's sent too early. And what our position is, and we're not suggesting that, what our position is, is that, as the cases say, there's a duty to fairly inform the insured of her rights. And that's a continuing duty. That option that you're insured had, the American family doesn't provide the defense. She goes out and hires her own lawyer. Right. And then if there's a judgment entered against her, the American family has to pay it unless they can show their actual intention. That's right. That's right. But in that case, again, they've given the opportunity for my client to go out and pay for her own counsel. Which sounds amazing. We'll pay for your lawyer, or you can pay for your own lawyer. And if we prevail on the declaratory judgment, you're stuck with your own attorney's fees. But if we lose on the declaratory judgment, you don't have to pay under either alternative. You don't have to pay if we provided the defense. You don't have to pay if you provided your own defense. I just don't see how any sane insured would say, I'm going to pay for my own lawyer and then run the risk of bearing that burden even if the insurance company prevails on the declaratory judgment. It's actually happened in some of the cases where the insured has retained its own counsel and then sought reimbursement from the insurance company. So that situation, and I think it depends, obviously, on the economics. Even if the insurance company did not have to pay the underlying judgment, they had to pay for the counsel? Well, if they had a duty to defend. If they had a duty to defend. If their duty to defend under the policy was triggered. And that's not a dispute here. If their duty to defend was triggered. In this case? Yes. If American Family does not prevail on the declaratory judgment, you don't have any problem. Because they're going to have to pay the... They're going to have to indemnify Shannon for the judgment entered by Judge Trawl, finding her to be negligent, which is covered under the policy. That's exactly right. I think my time is up, and I will cede to Mr. Ostojic. Thank you very much. Thank you, counsel. Thank you. May it please the Court, Robert Ostojic on behalf of Westfield Insurance. Your Honor, if I may just first to address your point about settlement. Typically, if an insurer doesn't want to settle the case, it need not, and it can tell the insurance company. What the insurer, though, knows is, well, in those cases, they can say, well, if I lose that trial, the insurance company will pay for it. I don't want to pay the plaintiff because I don't like them, or I don't believe I'm negligent. What we have here, though, is the opposite. And we've cited throughout the record, counsel for American Family that supervised Dennis absolutely didn't want to talk about settlement. I made numerous settlement offers. The attorney that actually handled the trial wrote to Mr. Kier... And you're saying American Family had no incentive to settle? Well, I'm not sure what... I'm saying... Let me tell you what their incentive is. If he loses his declaratory judgment action, he's got... American Family has to pay your entire judgment. Aren't they stupid for not settling if they're going to have to pay it anyway? Well, I think they're wrong, and I think it was said. But I think more importantly, if we look at it from Shannon's perspective, there's nothing in the record that she was ever told there's an offer to settle. What is her benefit? Her benefit is, okay, I settle for $100,000. I may have a fight with American Family, but it's $100,000 damage if I lose. She now has $458,000 judgment. The attorney that defended Shannon at the trial wrote to Mr. Kier, the supervising attorney at American Family, a verdict against Shannon is likely. Six months before the trial, you wrote him a letter and said, are we going to respond to Westfield's settlement offer? One word answer from the attorney, Kier, who is Shannon's attorney, said no. And that was it. Through his file notes now, we know that attorney Kier said, I would pay $100,000 or so, but do not offer that to Westfield. I want to see what's going to happen with the verdict. So essentially what American Family was doing was, we're going to lay in the weeds and see what happens with the verdict. If we prevail, great. If we don't, we're still going to file the D.J. Shannon gets anything. I don't know of any case where a client is not told of settlement offers or at least given the opportunity to talk or have some input on the settlement offers. That is a true conflict here. Going back to the timeliness issue, there is no set point in time. You have to file a reservation at this point, that point. But we all have a continuing duty to act properly. There's always that duty. In the attorney-client relationship, always. I may not have a conflict on day one, but on day 79. Can we take everything you say with a grain of salt? The idea that you have Shannon's best interests in mind, isn't that sort of frivolous? No. Well, it isn't necessarily frivolous, but I don't pretend to say I have Shannon's best interests in mind. I never said that. I was an adversary to her and to American family. But I do believe in this case that there was a true conflict that they should have recognized. If they didn't know it on day one, they certainly knew it on day 70. What did the American family not do here that they should have done? They should have, as soon as they knew of this conflict, where the attorney supervising Shannon's defense was also the attorney in American family that was deciding, I'm going to deny her coverage, they should have wrote her a letter and said, here is the potential conflict. I'm your supervising attorney, and I'm going to be the one to deny coverage to you. And then they should have done what Peppers and his progeny state. Inform her of the conflict and tell her, you have a right to your own counsel. Not at your expense, Shannon, which is the opposite of Illinois law. But at our expense, Shannon. Because that's the true conflict. She does not have a right to have them pay for her attorney if she acted intentionally. Well, Judge, I think that we're putting the carriage before the horse because, Dad, the intentional stuff comes later, at the time that the pleading is filed. And when the true conflict arises, we don't know. There hasn't been a determination of those facts. I think Peppers and his progeny in all the cases say, once a conflict arises, she gets to have her own counsel. She gets to choose. At least they have to inform her of the conflict and give her the opportunity to choose. So is the problem here that they didn't file the declaratory judgment action and seek that resolution before providing a defense? They could have. One of their options is to file a D.J. action. Another option is to actually send a proper reservation of rights, which they did. So, but that, according to you, that would have required the additional expense of paying for her own lawyer. Isn't that right? Well, they were paying for a lawyer for her. Now, paying for, but other than the lawyer they provided, she would have to pick a lawyer and they'd have to pay for that counsel. Isn't that your position? Under the true conflict, I think that's what Peppers and his progeny said. So their choices are essentially, under the facts of this case, either you file a declaratory judgment action, litigate not only indemnification, but whether you have to provide a defense, or you have to send a letter saying we have a conflict, you can hire your own lawyer, and we'll pay the costs of your own lawyer. Are those the only two choices? I believe under Illinois law, D.J. action or a proper reservation of rights. Because a proper reservation means hire a lawyer, we pay for it. You get to choose that. It's not necessarily you better hire a lawyer, but you have to at least inform him. Because I think the whole purpose of Peppers and all that is to inform and ensure so they can intelligently choose. Judge, can I have one final point I want to make on the collaborative example? Very quick, because we're out of time. To reverse the lower court's decision here would require reversal of supreme and appellate court decisions, including this court's decision in Leverton 1. The only issue on the collateral estoppel is whether we have an identity of issues. The American family concedes privity, which they must. We know it's a final determination by a court. The only issue is do we have an identity of issues. Every case in Illinois that I'm familiar with, including Leverton 1, says a D.J. filing is premature if there's an underlying tort case. Why? Because the conduct that you're dealing with here to characterize it as intentional or negligent or reckless, it's an identity of issues. So there would be a preclusive effect from the collateral estoppel factor, which is why all D.J. actions are stayed or dismissed pending the trial, pending the tort case. Here, what we have is the judge said that here we have the American family arguing, no, we have two different issues. If that's the case, then D.J. actions should proceed. Then they wouldn't be premature. In all those cases, including Leverton 1, that says D.J. actions are premature because of the possibility of collateral. I just want to say one thing here. In Leverton, the underlying cause of action, they sued for negligence and they sued for intentional misconduct. And then the plaintiff's lawyer said, oh, intentional misconduct, if I prevail on that, I'm going to screw up the insurance claim. So he dismissed that. And Leverton 1, as you said, said don't decide the declaratory judgment action until the underlying suit is over. But then Leverton 2, once the underlying suit was over, the insurance company was allowed to show that there was intentional misconduct. It's because of privity, Your Honor. Because in Leverton 2, the insurance company, and once you're not in privity, if you send a reservation of rights and give them pepper's counsel or you file a D.J., you're not a party in the action. So collateral estoppel doesn't apply. And every case says that. It says when the insurance company files the D.J., they're not in privity. So they can go ahead and say, if you find a negligence or whatever the tort theory is or contract theory, we still get to file our D.J. and argue our policy exclusion. That didn't happen here. We have an American family who wasn't privity, acknowledges that, controls the defense, controls all the settlement negotiations. And then after they lose, they say, okay, now we learned a lot about this case. Now we're going to take those same set of facts and we're going to now have a thorough trial on this. And that's what's wrong here. If we follow American families' position, that would mean in every negligence suit, regardless of what it is, an insurance company can simply say, well, there's a negligence finding. We have now a policy exclusion. Now we're going to file a D.J. action. And what that would do is simply – Justice could give me further questions. I'm sorry. You're out of time. You're way up. Thank you. Please. Mr. Chapin, let me ask you if this is possible. In this case, if American family had told the insured, you can go out and hire your own lawyer. We will not – if you don't want us to, we will not provide a defense. And then the insured had gone out and hired that lawyer. And then the judgment had come back, the same as it did, and you had filed your declaratory judgment action and prevailed. Would you owe the money that she spent on providing her own lawyer? Under these facts, no, because there was no conflict that justified her having an attorney at our expense, because it was a single count negligence action. And I think that what's really dispositive of this conflict issue is the court's statement in Shelter Mutual Insurance v. Bailey where the court said that an insurer's interest in negating coverage pursuant to an exclusion in a policy of insurance does not constitute a conflict of interest, at least not the type that would trigger the right to have your own attorney paid for at the insurer's expense. At a different level, there's a conflict, but not at the underlying action, which is where the conflict analysis is addressed. In every conflict case I've read, you must analyze the allegations in the underlying complaint to determine if a conflict of interest exists there. What was the case you cited? Shelter Mutual Insurance Company v. Bailey at page 5 of our complaint. What about the discussion, counsel, about the negotiations and settlement discussions of how there is apparently a conflict between the insured and the insurer's interest in that? I don't think that – well, first of all, under the policy, the insurer always retains the right to control litigation, including settlement negotiations. Secondly, this is not a case where there was excess exposure and a demand was made within the policy limit such that there would be that type of a concern. The policy limit was for $500,000. The exposure was less than $500,000. All negotiations – Well, you heard the argument. Let's say the offer was $100,000. Shannon wants to settle, make this all go away. The insurance company could have said no? The insurance company could have said no. The policy does not – it's not like a medical malpractice or professional liability policy that gives the insured the right to approve or disapprove the settlement. It's entirely with the insurer. That's a part of the contract. Now, it might not be a wise decision, but maybe the insurer is thinking, hey, I can go to trial. So the insured has no input? Pardon? The insured has no input? Under the contract, the insured has no right to control the settlement. Well, what if the insurance company says, no, we're not going to settle for $100,000, and the case is tried and $400,000 of judgment is rendered, and now you have a declaratory judgment action, which says, by the way, we don't owe you anything. You're not covered. That's our position. That's exactly what they told her in the reservation price letter up front, is that we will defend you, but in the event there is a judgment against you under the policy, there is a potential exclusion, which, if proven, would deny you any indemnity. Well, hasn't she then been hurt by the fact that you turned down a $100,000 judgment settlement offer? Now she has over $400,000 of judgment against her, and maybe she should have had her own lawyer represent her in that regard. Well, she certainly had the right to seek her own attorney at any time, at her own expense. Because then she could have had an attorney at her own expense representing her and say, I want to accept the $100,000 settlement offer. She could not commit the American Family money to satisfy that offer. She could commit to her own assets and then try to get it back in a D.J. action, perhaps. But even if American Family says, we'll pay your attorney of your own choice, that attorney does not then have the right to decide whether or not the case settles or for how much. So the ultimate settlement in a case like this still lies with the approval of the insurance company who's going to be paying. That's correct, because they have the exposure. Like you point out, if we do not, if American Family is unsuccessful with the D.J., they owe that judgment. If they're successful, then they had nothing. By contract, it excluded the conduct which was set up. Well, the argument you heard suggests that she would have some more control over the settlement than this. That is not in the contract, which is a part of the record.  There's nothing in there that says it's not in the record. Is this typically the case in the insurance contracts of this kind as opposed to medical malpractice? Not in any homeowner's liability or auto liability policy that I have ever read. So the insurance company ultimately has the decision on whether to pay or settle or whatever. Certainly where the exposure is entirely within the coverage, where you don't have an excess exposure. If I could make just two real quick comments. First of all, Jim Keene was not Shannon's attorney. Jim Keene is an attorney working for American Family's legal department. He appointed an attorney for Shannon Dennis. The fact that he's an attorney does not convert him into Shannon's attorney subject to the ethical duties of one who represents Shannon. That was with Mr. Morris, who was retained by American Family to ethically represent their insured, and there's no contention he did anything less. And second, the argument that we have conceded privity. We have not conceded privity. We have not argued it because it's the second of three steps, and if the first one, identity of issue, does not exist, we don't need to address privity. We have never conceded the issue of privity. So I just want to clear those arguments out. I thank you both, or thank all of you very much. I appreciate your time. And the court thanks the three of you for your spirited arguments and the cases submitted.